Case 8:22-cv-03229-DKC   Document 3-1   Filed 12/15/22   Page 1 of 20
E-FILED; Montgomery Circuit Court
Docket: 11/14/2022 3:10 PM; Submission: 11/14/2022 3:10 PM

DocuSign Envelope ID: 55B5A9A0-8F0A-4DBE-A4B7-C428672CA34A

## SECOND AMENDMENT TO LEASE

**THIS SECOND AMENDMENT TO LEASE** (the "Amendment") is made and entered into as of the 1st day of January, 2021 (the "Agreement Date") by and between KENTLANDS SQUARE LLC (hereinafter referred to as "Landlord") and NOT YOUR AVERAGE JOE'S, INC., a Delaware corporation (hereinafter referred to as "Tenant") T/A NOT YOUR AVERAGE JOE'S.

**WHEREAS**, Landlord (or its predecessor) and Tenant have entered into that certain Lease dated May 20, 2011 and a First Amendment to Lease dated April 1, 2020 ("First Amendment") (collectively, the "Lease") for approximately 6,437 square feet of space in the Kentlands Square II Shopping Center located at 245 Kentlands Boulevard, Gaithersburg, Maryland 20878; and

**WHEREAS**, the parties hereto desire to enter into this Amendment for the purposes hereinafter set out.

**NOW, THEREFORE**, in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **WAIVED MINIMUM RENT.** (a) Landlord agrees to waive collection of the Minimum Rent payable under the terms of the Lease for the period commencing on January 1, 2021 and ending on May 31, 2021 (the "Waived Rent Period") in the monthly amount of $21,832.16 in accordance with the provisions of this Amendment. The total amount to be waived during the Waived Rent Period is $109,160.80 (the "Waived Rent").

(b) During the Waived Rent Period, instead of paying the monthly installments of Minimum Rent, Tenant shall pay the amount as set forth in Paragraph 2 of this Amendment. Tenant shall resume payment on June 1, 2021 of the originally scheduled amounts of monthly installments of Minimum Rent, as may be amended herein.

(c) In the event that Tenant becomes a debtor under the Bankruptcy Code and the Lease is rejected, set aside, deemed void or otherwise avoided under the Bankruptcy Code or other applicable law, then this Amendment shall, at the option of Landlord, be deemed not to have occurred, and Landlord shall be entitled to pursue any and all claims against Tenant for rent and other amounts due under the Lease as if this Amendment had never been entered into including, without limitation, a claim as an unsecured creditor for amounts not paid prior to Tenant's bankruptcy petition, claims for administrative rent under Section 503 of the Bankruptcy Code and damages for rejection of the Lease under Section 502(b)(6) of the Bankruptcy Code.

2. **MINIMUM RENT DURING WAIVED RENT PERIOD.** (a) Notwithstanding anything contained in Section 2.08 of the Lease to the contrary, during the Waived Rent Period, Tenant shall pay as its Minimum Rent, in lieu of amounts provided for in Section 2.01 of the Lease (as may have been amended), the amount of (i) eight percent (8%) of Tenant's Gross Receipts (as defined in Section 2.08 of the Lease) for the months of January, February and March of the Waived Rent Period and (ii) ten percent (10%) of Tenant's Gross Receipts for the months of April and May of the Waived Rent Period (collectively, the "Second Modified Minimum Rent") which amount shall be payable

NOT YOUR AVERAGE JOE L2 – 2ND AMENDMENT
CO 8/24/21 KENTLANDS SQ. II



PLAINTIFF'S EXHIBIT 1

monthly, on or before the tenth (10th) day of each month, with respect to Gross Receipts made from the Premises during the immediately preceding month. Simultaneously with Tenant's execution of this Amendment, Tenant shall submit its monthly Gross Receipts and Second Modified Minimum Rent for all applicable past months during the Waived Rent Period where Tenant can provide the applicable Gross Receipts, if not already provided and paid by Tenant.

(b) Notwithstanding anything contained in the Lease to the contrary, Tenant covenants and agrees that not later than the tenth (10th) day after the close of each calendar month of the Waived Rent Period, it will deliver to Landlord a complete, true and accurate report based on Tenant's financial statements verified by Tenant or by an authorized officer of Tenant, of all Gross Receipts for such month. In the event of a dispute between Landlord and Tenant about the accuracy of the Gross Receipts, Landlord shall provide a schedule for Tenant to use to submit Gross Receipts to Landlord. The obligations contained in this paragraph to report Gross Receipts and to pay the Second Modified Minimum Rent as set forth herein shall survive the expiration or other termination of the Lease.

3. **RENTAL ARREARS**. (a) As of June 1, 2021, Tenant owes Landlord an amount equal to $7,131.54 (the "Rental Arrearage") as more specifically set forth on Exhibit A attached hereto. The Rental Arrearage shall be submitted to Landlord simultaneously with Tenant's execution of this Amendment.

4. **TERM.** Article 1 of the Lease captioned "Term" is hereby amended to extend the Initial Term of the Lease for thirty (30) months, commencing on July 1, 2022 and ending on December 31, 2024 ("Second Extension Term").

5. **MINIMUM RENT.** Notwithstanding anything contained in the Lease to the contrary, effective on July 1, 2022, Tenant shall pay Minimum Rent during the Second Extension Term as follows:

| Dates | Annually | Monthly |
|---|---|---|
| 7/1/22 – 12/31/24 | $261,985.92 | $21,832.16 |

6. **EXTENSIONS OF THE TERM OF THE LEASE.** Section 1.05 of the Lease titled "Extensions of the Terms of the Lease" shall be deleted in its entirety and replaced with the following:

" §1.05. Extensions of the Term of the Lease. The Initial Term/Extension Term/Second Extension Term of the Lease shall be extended subject to the terms set forth on Exhibit C, attached hereto. The Initial Term/Extension Term/Second Extension Term and each Extension Period for which the option shall have been duly exercised hereunder, if applicable, shall be collectively referred to as the "Term"."

7. **EXHIBIT C.** The chart provided in Exhibit C of the Lease titled "Extension", as modified in Paragraph 6 of the First Amendment, is hereby deleted in its entirety and replaced with the following chart:

Minimum Rent

DocuSign Envelope ID: 55B5A9A0-8F0A-4DBE-A4B7-C428672CA34A

| Year(s) | Per Square Foot | Annual Amount | Monthly Amount |
|---|---|---|---|
| 1/1/25 – 12/31/29 | $44.77 | $288,184.49 | $24,015.37 |
| 1/1/30 – 12/31/34 | $49.25 | $317,022.25 | $26,418.52 |

8. **MISCELLANEOUS.** Except as specifically modified hereby, the Lease shall remain in full force and effect in accordance with the terms contained therein and is hereby ratified, approved and confirmed in all respects. Any agreement, obligation or liability made, entered into or incurred by or on behalf of Landlord binds only its property and no shareholder, trustee, officer, director, employee, partner or agent of Landlord assumes or shall be held to any liability therefor. The provisions of this Amendment shall be binding upon the parties hereto, their successors, and to the extent permitted under the Lease, their assigns. If drafts of this Amendment or other communications between the parties were sent (or are hereafter sent) by email or other electronic methods, then the following additional provisions shall also apply: (i) any typewritten signature included with any e-mail or any document attached to any email is not an electronic signature within the meaning of Electronic Signatures in Global and National Commerce Act or any other law of similar import, including without limitation, the Uniform Electronic Transactions Act ("UETA"), as the same may be enacted in any State, and (ii) any transmission of this Amendment is not intended as an "electronic signature" to a "record" of such transaction (as those terms are defined under UETA); instead, a record of such transaction shall be created only upon either (A) manually-affixed original signatures on an original Amendment document, or (B) electronic signatures as provided below in this paragraph. The parties agree that this Amendment or any other document necessary for the consummation of the transaction contemplated by this Amendment may be accepted, executed or agreed to through the use of an electronic signature in accordance with the Electronic Signatures in Global and National Commerce Act, the UETA, or any applicable state or local jurisdictional laws. Any document (including but not limited to this Amendment) accepted, executed, delivered or agreed to in conformity with such laws will be deemed an original and will be binding on the parties in the same manner and shall have the same legal validity and enforceability as if it were physically or manually accepted, executed, delivered or agreed (including but not limited to by "wet ink" signatures). Tenant hereby consents to the use of any third party electronic signature capture service providers as may be chosen by Landlord on and after the date of this Amendment. If Tenant is a corporation, partnership or limited liability company, the persons executing this Amendment on behalf of Tenant hereby covenant and warrant that: Tenant is duly constituted as such entity and is qualified to do business in the state where the Premises are located; all Tenant's franchise and corporate taxes have been paid to date; all future forms, reports, fees and other documents necessary for Tenant to comply with applicable laws will be filed by Tenant when due; and such persons are duly authorized by the board of directors, partnership agreement or other applicable authority of such entity to execute and deliver this Amendment on behalf of the Tenant.

9. **INTERPRETATION.** The submission of this Amendment for examination does not constitute an agreement; an option or an offer, and this Amendment becomes effective only upon execution and delivery thereof by Landlord. Neither party shall have any legal obligation to the other in the event that the Amendment contemplated herein is not consummated for any reason. Discussions between the parties respecting the proposed Amendment described herein, shall not serve as a basis for a claim against either party or any officer, director or agent of either party.

DocuSign Envelope ID: 55B5A9A0-8F0A-4DBE-A4B7-C428672CA34A

Captions and headings are for convenience and reference only and shall not in any way define, limit or describe the scope or content of any provision of this Amendment. Except as otherwise provided herein, capitalized terms shall have the same meaning as set forth in the Lease. Whenever in this Amendment (i) any printed portion, or any part thereof, has been stricken out, or (ii) any portion of the Lease (as the same may have been previously amended) or any part thereof, has been modified or stricken out, then, in either of such events, whether or not any replacement provision has been added, this Amendment and the Lease shall hereafter be read and construed as if the material so stricken out were not included, and no implication shall be drawn from the text of the material so stricken out which would be inconsistent in any way with the construction or interpretation which would be appropriate if such material had never been contained herein or in the Lease. The Exhibits referred to in this Amendment and attached hereto are a substantive part of this Amendment and are incorporated herein by reference.

The remainder of this page is intentionally blank.
Signature page follows.

NOT YOUR AVERAGE JOE L2 – 2ND AMENDMENT
CO 6/24/21 KENTLANDS SQ. II

DocuSign Envelope ID: 55B5A9A0-8F0A-4DBE-A4B7-C428672CA34A

**IN WITNESS WHEREOF**, the parties hereto have executed this Amendment under seal on the day and year first above written.

ATTEST:   TENANT: NOT YOUR AVERAGE JOE'S, INC.

_Kelly Kelley_ (seal)   By: _Joe McGuire_ (seal)
Printed Name: Kelly Kelley   Name: Joe McGuire
Title: Secretary   Title: CFO


ATTEST:   LANDLORD: KENTLANDS SQUARE LLC

   By: Saul Centers, Inc., Manager

_Audra Justus_   By: _D. Todd Pearson_ (seal)
(seal) Assistant Secretary   Name: D. Todd Pearson
   Title: President and Chief Operating Officer

NOT YOUR AVERAGE JOE L2 – 2ND AMENDMENT
CO 6/24/21 KENTLANDS SQ. II

## EXHIBIT A

Not Your Average Joe's

|  |  |  |  |
|---|---|---|---|
|  |  | Arrearage through 5/31/2021 | $82,160.28 |
|  |  | Backed out Rent | ($109,160.80) |
|  |  | Percentage Rents only | $51,555.43 |
|  |  | Net Amount Due 6.10.21 | $24,554.91 |
|  | Jan Backout - Base Rent | $21,832.16 |  |
|  | Feb Backout - Base Rent | $21,832.16 |  |
|  | March Backout - Base Rent | $21,832.16 |  |
|  | April Backout - Base Rent | $21,832.16 |  |
|  | May Backout - Base Rent | $21,832.16 |  |
| $93,878.81 | Jan 8% of gross sales | $7,510.30 |  |
| $83,056.41 | Feb 8% of gross sales | $6,644.51 |  |
| $135,078.30 | March 8% of gross sales | $10,806.26 |  |
| $127,857.25 | April 10% of gross sales | $12,785.73 |  |
| $138,086.21 | May 10% of gross sales | $13,808.62 |  |

## EXHIBIT A

Not Your Average Joe's

|  |  |  |  |
|---|---|---|---|
|  |  | Arrearage through 5/31/2021 | $64,736.92 |
|  |  | Backed out Rent | ($109,160.80) |
|  |  | Percentage Rents only | $51,555.42 |
|  |  | Net Amount Due 6.10.21 | $7,131.54 |
|  | Jan Backout - Base Rent | $21,832.16 |  |
|  | Feb Backout - Base Rent | $21,832.16 |  |
|  | March Backout - Base Rent | $21,832.16 |  |
|  | April Backout - Base Rent | $21,832.16 |  |
|  | May Backout - Base Rent | $21,832.16 |  |
| $93,878.81 | Jan 8% of gross sales | $7,510.30 |  |
| $83,056.41 | Feb 8% of gross sales | $6,644.51 |  |
| $135,078.30 | March 8% of gross sales | $10,806.26 |  |
| $127,857.25 | April 10% of gross sales | $12,785.73 |  |
| $138,086.21 | May 10% of gross sales | $13,808.62 |  |

NOT YOUR AVERAGE JOE L2 – 2ND AMENDMENT
CO 6/24/21 KENTLANDS SQ. II

DocuSign Envelope ID: 55B5A9A0-8F0A-4DBE-A4B7-C428672CA34A

**DocuSign**

## Certificate Of Completion

Envelope Id: 03A5C69DE20C403795353625CBB43A98  Status: Completed
Subject: EXECUTION DOCUMENT: Kentlands Square II-Not Your Average Joe's-Second Amendment to Lease
SDLC:
IT Policy:
Source Envelope:
Document Pages: 6          Signatures: 2           Envelope Originator:
Certificate Pages: 6       Initials: 0             Audra Justus
AutoNav: Enabled                                   7501 Wisconsin Ave
EnvelopeId Stamping: Enabled                       Suite 1500E
Time Zone: (UTC-05:00) Eastern Time (US & Canada)  Bethesda, MD 20814
                                                   audra.justus@saulcenters.com
                                                   IP Address: 38.100.6.140

## Record Tracking

Status: Original              Holder: Audra Justus              Location: DocuSign
       7/6/2021 10:57:23 AM          audra.justus@saulcenters.com

## Signer Events | Signature | Timestamp

Joe McGuire                                                     Sent: 7/6/2021 11:03:19 AM
jmcguire@nyajoes.com         *Joe McGuire* (signed)             Viewed: 7/6/2021 11:52:35 AM
CFO                                                             Signed: 7/6/2021 11:52:50 AM
Security Level: Email, Account Authentication
(None)                        Signature Adoption: Pre-selected Style
                              Using IP Address: 50.206.253.82

**Electronic Record and Signature Disclosure:**
   Accepted: 9/28/2020 12:59:51 PM
   ID: 0c0f3ce5-29e5-4690-979c-5748e2c0dee0
   Company Name: Saul Centers, Inc., B. F. Saul Company, and respective affiliates and subsidiaries

Kelly Kelley                                                    Sent: 7/6/2021 11:52:51 AM
kkelley@nyajoes.com          *Kelly Kelley* (signed)            Resent: 7/6/2021 2:26:12 PM
Controller                                                      Resent: 7/7/2021 9:36:04 AM
Security Level: Email, Account Authentication                   Viewed: 7/7/2021 10:15:08 AM
(None)                        Signature Adoption: Pre-selected Style   Signed: 7/7/2021 1:20:06 PM
                              Using IP Address: 104.208.246.177

**Electronic Record and Signature Disclosure:**
   Accepted: 7/7/2021 10:15:08 AM
   ID: 3311bccb-9ffd-4d7d-8706-e7fd6dd776f8
   Company Name: Saul Centers, Inc., B. F. Saul Company, and respective affiliates and subsidiaries

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

DocuSign Envelope ID: 55B5A9A0-8F0A-4DBE-A4B7-C428672CA34A

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 7/6/2021 11:03:19 AM |
| Certified Delivered | Security Checked | 7/7/2021 10:15:08 AM |
| Signing Complete | Security Checked | 7/7/2021 1:20:06 PM |
| Completed | Security Checked | 7/7/2021 1:20:06 PM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

**DocuSign**

## Certificate Of Completion

Envelope Id: 55B5A9A08F0A4DBEA4B7C428672CA34A  Status: Completed
Subject: BROWN FOLDER/EXECUTION BY LL: Kentlands Sq. II-Not Your Average Joe's-Tenant Signed 2nd Amendment
SDLC:
IT Policy:
Source Envelope:
Document Pages: 30                Signatures: 2            Envelope Originator:
Certificate Pages: 7              Initials: 20             Audra Justus
AutoNav: Enabled                                           7501 Wisconsin Ave
EnvelopeId Stamping: Enabled                               Suite 1500E
Time Zone: (UTC-05:00) Eastern Time (US & Canada)          Bethesda, MD 20814
                                                           audra.justus@saulcenters.com
                                                           IP Address: 38.100.6.140

## Record Tracking

Status: Original              Holder: Audra Justus               Location: DocuSign
        7/29/2021 11:39:30 AM         audra.justus@saulcenters.com

## Signer Events                Signature                         Timestamp

Bryan Megary                                                      Sent: 7/29/2021 11:48:22 AM
bryan.megary@bfsaulco.com        [BM]                             Viewed: 7/29/2021 1:36:17 PM
Security Level: Email, Account Authentication                     Signed: 7/29/2021 1:37:55 PM
(None)

                              Signature Adoption: Pre-selected Style
                              Using IP Address: 38.100.6.140

**Electronic Record and Signature Disclosure:**
    Accepted: 8/16/2021 6:25:19 AM
    ID: e759242f-d0e0-4a16-8f43-1b21dca78fb7
    Company Name: Saul Centers, Inc., B. F. Saul Company, and respective affiliates and subsidiaries

Edwina James                                                      Sent: 7/29/2021 1:37:58 PM
edwina.james@saulcenters.com      [EJ]                            Viewed: 7/29/2021 1:55:36 PM
Security Level: Email, Account Authentication                     Signed: 7/29/2021 1:56:39 PM
(None)

                              Signature Adoption: Pre-selected Style
                              Using IP Address: 38.100.6.140

**Electronic Record and Signature Disclosure:**
    Accepted: 8/12/2021 4:39:40 PM
    ID: ab9d2cca-e4b4-4d29-80d8-10b975337ab6
    Company Name: Saul Centers, Inc., B. F. Saul Company, and respective affiliates and subsidiaries

Aileen Cullen                                                     Sent: 7/29/2021 1:56:42 PM
aileen.cullen@saulcenters.com     [aC]                            Viewed: 7/29/2021 2:14:46 PM
Security Level: Email, Account Authentication                     Signed: 7/29/2021 2:15:23 PM
(None)

                              Signature Adoption: Pre-selected Style
                              Using IP Address: 173.79.66.161

**Electronic Record and Signature Disclosure:**
    Accepted: 8/12/2021 4:10:36 PM
    ID: 4952230a-2c1b-4e1e-896e-b4928692b508
    Company Name: Saul Centers, Inc., B. F. Saul Company, and respective affiliates and subsidiaries

| Signer Events | Signature | Timestamp |
|---|---|---|
| Karen Walsh<br>karen.walsh@saulcenters.com<br>Vice President, Collections Manager<br>Saul Centers, Inc.<br>Security Level: Email, Account Authentication (None) | [KW]<br>Signature Adoption: Pre-selected Style<br>Using IP Address: 173.66.213.81<br>Signed using mobile | Sent: 7/29/2021 2:15:26 PM<br>Viewed: 7/29/2021 2:51:39 PM<br>Signed: 7/29/2021 2:51:46 PM |
| **Electronic Record and Signature Disclosure:**<br>Not Offered via DocuSign | | |
| Merle Sustersich<br>merle.sustersich@bfsaulco.com<br>Security Level: Email, Account Authentication (None) | [MTS]<br>Signature Adoption: Drawn on Device<br>Using IP Address: 73.129.22.2<br>Signed using mobile | Sent: 7/29/2021 2:51:49 PM<br>Resent: 7/30/2021 9:51:12 AM<br>Viewed: 7/30/2021 11:01:57 AM<br>Signed: 7/30/2021 11:03:07 AM |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 8/16/2021 11:05:27 AM<br>ID: 7d1b397f-5d21-4b70-829e-c2ba7e77d988<br>Company Name: Saul Centers, Inc., B. F. Saul Company, and respective affiliates and subsidiaries | | |
| Chris Netter<br>chris.netter@saulcenters.com<br>EVP<br>Security Level: Email, Account Authentication (None) | [CN]<br>Signature Adoption: Pre-selected Style<br>Using IP Address: 173.23.168.248 | Sent: 7/30/2021 11:03:11 AM<br>Resent: 8/2/2021 10:40:18 AM<br>Viewed: 8/3/2021 8:59:42 AM<br>Signed: 8/3/2021 9:02:16 AM |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 8/15/2021 2:33:41 PM<br>ID: 71edd216-b229-45dc-b186-8bd8ae326f0d<br>Company Name: Saul Centers, Inc., B. F. Saul Company, and respective affiliates and subsidiaries | | |
| Carlos L. Heard<br>carlos.heard@bfsaulco.com<br>Security Level: Email, Account Authentication (None) | [CH]<br>Signature Adoption: Pre-selected Style<br>Using IP Address: 38.100.6.140 | Sent: 8/3/2021 9:02:19 AM<br>Resent: 8/4/2021 3:51:05 PM<br>Resent: 8/5/2021 10:32:44 AM<br>Resent: 8/10/2021 10:59:25 AM<br>Viewed: 8/6/2021 8:36:59 AM<br>Signed: 8/10/2021 11:29:31 AM |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 8/9/2021 6:41:34 PM<br>ID: 15a0b577-b850-40de-885a-ec3aaf07baa2<br>Company Name: Saul Centers, Inc., B. F. Saul Company, and respective affiliates and subsidiaries | | |
| D. Todd Pearson<br>todd.pearson@bfsaulco.com<br>April<br>Security Level: Email, Account Authentication (None) | DocuSigned by:<br>D. Todd Pearson<br>Signature Adoption: Pre-selected Style<br>Using IP Address: 38.100.6.140 | Sent: 8/10/2021 11:29:35 AM<br>Resent: 8/12/2021 11:35:48 AM<br>Resent: 8/13/2021 11:21:51 AM<br>Viewed: 8/16/2021 11:03:22 AM<br>Signed: 8/16/2021 11:05:47 AM |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 8/16/2021 11:06:07 AM<br>ID: 614eab25-c992-43a7-b05e-017a59cecaa5<br>Company Name: Saul Centers, Inc., B. F. Saul Company, and respective affiliates and subsidiaries | | |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Audra Justus<br>audra.justus@saulcenters.com<br>Executive Vice President<br>Saul Centers, Inc.<br>Security Level: Email, Account Authentication (None) | *DocuSigned by:*<br>Audra Justus<br>—A872547F21BF481<br>Signature Adoption: Pre-selected Style<br>Using IP Address: 38.100.6.140 | Sent: 8/16/2021 11:05:51 AM<br>Viewed: 8/16/2021 11:06:18 AM<br>Signed: 8/16/2021 11:06:27 AM |
| Electronic Record and Signature Disclosure:<br>   Not Offered via DocuSign | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 7/29/2021 11:48:22 AM |
| Certified Delivered | Security Checked | 8/16/2021 11:06:18 AM |
| Signing Complete | Security Checked | 8/16/2021 11:06:27 AM |
| Completed | Security Checked | 8/16/2021 11:06:27 AM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

## FIRST AMENDMENT TO LEASE

**THIS FIRST AMENDMENT TO LEASE** (the "Amendment") is made and entered into as of the 1st day of April, 2020 (the "Agreement Date") by and between KENTLANDS SQUARE LLC, successor-in-interest to Kentlands Retail, Inc. (hereinafter referred to as "Landlord") and NOT YOUR AVERAGE JOE'S, INC., a Delaware corporation (hereinafter referred to as "Tenant") T/A NOT YOUR AVERAGE JOE'S.

**WHEREAS**, Landlord (or its predecessor) and Tenant have entered into that certain Lease dated May 20, 2011 (the "Lease") for approximately 6,437 square feet of space in the Kentlands Square II Shopping Center located at 245 Kentlands Boulevard, Gaithersburg, Maryland 20878; and

**WHEREAS**, the parties hereto desire to enter into this Amendment for the purposes hereinafter set out.

**NOW, THEREFORE**, in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **ABATEMENT.** (a) Landlord agrees to abate the Minimum Rent payable under the terms of the Lease for the period commencing on April 1, 2020 and ending on December 31, 2020 (the "Abatement Period") in the monthly amount of $21,832.16 in accordance with the provisions of this Amendment. The total amount to be abated during the Abatement Period is $$196,489.43 (the "Abated Rent").

    (b) During the Abatement Period, instead of paying the monthly installments of Minimum Rent, Tenant shall pay the amount as set forth in Paragraph 2 of this Amendment. Tenant shall resume payment on January 1, 2021 of the originally scheduled amounts of monthly installments of Minimum Rent, as may be amended herein.

2. **MINIMUM RENT DURING ABATEMENT PERIOD.** (a) Notwithstanding anything contained in Section 2.08 of the Lease to the contrary, during the Abatement Period, Tenant shall pay as its Minimum Rent, in lieu of amounts provided for in Section 2.01 of the Lease (as may have been amended), the amount of eight percent (8%) of Tenant's Gross Receipts (as defined in Section 2.08 of the Lease) ("Modified Minimum Rent") for each calendar month during the Abatement Period, which amount shall be payable monthly, on or before the tenth (10th) day of each month, with respect to Gross Receipts made from the Premises during the immediately preceding month. Simultaneously with Tenant's execution of this Amendment, Tenant shall submit its monthly Gross Receipts and Modified Minimum Rent for all applicable past months during the Abatement Period where Tenant can provide the applicable Gross Receipts, if not already provided and paid by Tenant. The parties acknowledge that Tenant has previously paid Landlord $13,891.22 for the months of June and July and Tenant still owes Landlord the remaining amount of $4,630.38 for Modified Minimum Rent for the months of June and July.

    (b) Notwithstanding anything contained in the Lease to the contrary, Tenant covenants and agrees that not later than the tenth (10th) day after the close of each calendar month of the Abatement Period, it will deliver to Landlord a complete, true and accurate report based on Tenant's financial statements verified by Tenant or by an authorized officer of Tenant, of all Gross Receipts

NOT YOUR AVERAGE JOE'S L3 – 1ST AMENDMENT
CO 9/16/20 KENTLANDS SQ. II

1



for such month. In the event of a dispute between Landlord and Tenant about the accuracy of the Gross Receipts, Landlord shall provide a schedule for Tenant to use to submit Gross Receipts to Landlord. The obligations contained in this paragraph to report Gross Receipts and to pay Modified Minimum Rent as set forth herein shall survive the expiration or other termination of the Lease.

3.   **TERM.** Article 1 of the Lease captioned "Term" is hereby amended to extend the Initial Term of the Lease for four (4) months, commencing on March 1, 2022 and ending on June 30, 2022 ("Extension Term").

4.   **MINIMUM RENT.** Notwithstanding anything contained in the Lease to the contrary, effective on March 1, 2022, Tenant shall pay Minimum Rent during the Extension Term as follows:

| Dates | Annually | Monthly |
|---|---|---|
| 3/1/22 – 6/30/22 | $261,985.92 | $21,832.16 |

5.   **EXTENSIONS OF THE TERM OF THE LEASE.** Section 5.01 of the Lease titled "Extensions of the Terms of the Lease" shall be deleted in its entirety and replaced with the following:

" §1.05. Extensions of the Term of the Lease. The Initial Term/Extension Term of the Lease shall be extended subject to the terms set forth on Exhibit C, attached hereto. The Initial Term/Extension Term and each Extension Period for which the option shall have been duly exercised hereunder, if applicable, shall be collectively referred to as the "Term"."

6.   **EXHIBIT C.** The chart provided in Exhibit C of the Lease titled "Extension" is hereby deleted in its entirety and replaced with the following chart:

Minimum Rent

| Year(s) | Per Square Foot | Annual Amount | Monthly Amount |
|---|---|---|---|
| 7/1/22 – 6/30/27 | $44.77 | $288,184.49 | $24,015.37 |
| 7/1/27 – 6/30/32 | $49.25 | $317,022.25 | $26,418.52 |

7.   **MISCELLANEOUS.** Except as specifically modified hereby, the Lease shall remain in full force and effect in accordance with the terms contained therein and is hereby ratified, approved and confirmed in all respects. Any agreement, obligation or liability made, entered into or incurred by or on behalf of Landlord binds only its property and no shareholder, trustee, officer, director, employee, partner or agent of Landlord assumes or shall be held to any liability therefor. The provisions of this Amendment shall be binding upon the parties hereto, their successors, and to the extent permitted under the Lease, their assigns.  If drafts of this Amendment or other communications between the parties were sent (or are hereafter sent) by email or other electronic methods, then the following additional provisions shall also apply:  (i) any typewritten signature included with any e-mail or any document attached to any email is not an electronic signature within the meaning of Electronic Signatures in Global and National Commerce Act or any other law of similar import, including without limitation, the Uniform Electronic Transactions Act ("UETA"), as the same may be enacted in any State, and (ii) any transmission of this Amendment is not intended as an "electronic signature" to a "record" of such transaction (as those terms are

NOT YOUR AVERAGE JOE'S L3 – 1ST AMENDMENT
CO 9/16/20 KENTLANDS SQ. II

defined under UETA); instead, a record of such transaction shall be created only upon either (A) manually-affixed original signatures on an original Amendment document, or (B) electronic signatures as provided below in this paragraph. The parties agree that this Amendment or any other document necessary for the consummation of the transaction contemplated by this Amendment may be accepted, executed or agreed to through the use of an electronic signature in accordance with the Electronic Signatures in Global and National Commerce Act, the UETA, or any applicable state or local jurisdictional laws. Any document (including but not limited to this Amendment) accepted, executed, delivered or agreed to in conformity with such laws will be deemed an original and will be binding on the parties in the same manner and shall have the same legal validity and enforceability as if it were physically or manually accepted, executed, delivered or agreed (including but not limited to by "wet ink" signatures). Tenant hereby consents to the use of any third party electronic signature capture service providers as may be chosen by Landlord on and after the date of this Amendment. If Tenant is a corporation, partnership or limited liability company, the persons executing this Amendment on behalf of Tenant hereby covenant and warrant that: Tenant is duly constituted as such entity and is qualified to do business in the state where the Premises are located; all Tenant's franchise and corporate taxes have been paid to date; all future forms, reports, fees and other documents necessary for Tenant to comply with applicable laws will be filed by Tenant when due; and such persons are duly authorized by the board of directors, partnership agreement or other applicable authority of such entity to execute and deliver this Amendment on behalf of the Tenant.

      8.    **INTERPRETATION.** The submission of this Amendment for examination does not constitute an agreement, an option or an offer, and this Amendment becomes effective only upon execution and delivery thereof by Landlord. Neither party shall have any legal obligation to the other in the event that the Amendment contemplated herein is not consummated for any reason. Discussions between the parties respecting the proposed Amendment described herein, shall not serve as a basis for a claim against either party or any officer, director or agent of either party. Captions and headings are for convenience and reference only and shall not in any way define, limit or describe the scope or content of any provision of this Amendment. Except as otherwise provided herein, capitalized terms shall have the same meaning as set forth in the Lease. Whenever in this Amendment (i) any printed portion, or any part thereof, has been stricken out, or (ii) any portion of the Lease (as the same may have been previously amended) or any part thereof, has been modified or stricken out, then, in either of such events, whether or not any replacement provision has been added, this Amendment and the Lease shall hereafter be read and construed as if the material so stricken out were not included, and no implication shall be drawn from the text of the material so stricken out which would be inconsistent in any way with the construction or interpretation which would be appropriate if such material had never been contained herein or in the Lease.

The remainder of this page is intentionally blank.
Signature page follows.

NOT YOUR AVERAGE JOE'S L3 – 1ST AMENDMENT
CO 9/16/20 KENTLANDS SQ. II

**IN WITNESS WHEREOF**, the parties hereto have executed this Amendment under seal on the day and year first above written.

ATTEST:                                   TENANT: NOT YOUR AVERAGE JOE'S, INC.

*Kelly Kelley* (seal)                     By: *Joe McGuire* (seal)
Printed Name: Kelly Kelley                Name: Joe McGuire
Title: Secretary                          Title: CFO


ATTEST:                                   LANDLORD: KENTLANDS SQUARE LLC

*Audra Justus*                            By: Saul Centers, Inc., Manager
(seal) Assistant Secretary                By: *Scott Schneider* (seal)
                                          Name: Scott Schneider
                                          Title: Executive Vice President


NOT YOUR AVERAGE JOE'S L3 – 1ST AMENDMENT
CO 9/16/20 KENTLANDS SQ. II



## Certificate Of Completion

Envelope Id: E9303AFDF26B440BA537A593C617092E  
Subject: EXECUTION DOCUMENT: Kentlands Square II-Not Your Average Joe's-First Amendment to Lease  
SDLC:  
IT Policy:  
Source Envelope:  
Document Pages: 4   Signatures: 4   Envelope Originator:  
Certificate Pages: 6   Initials: 1   Saul Centers Leasing Docs  
AutoNav: Enabled   7501 Wisconsin Ave  
EnvelopeId Stamping: Enabled   Suite 1500E  
Time Zone: (UTC-05:00) Eastern Time (US & Canada)   Bethesda, MD 20814  
leasingdocs@bfsaul.com  
IP Address: 38.100.6.140  

Status: Completed

## Record Tracking

Status: Original   Holder: Saul Centers Leasing Docs   Location: DocuSign  
9/28/2020 11:23:52 AM   leasingdocs@bfsaul.com

## Signer Events | Signature | Timestamp

**Joe McGuire**  
jmcguire@nyajoes.com  
CFO  
Security Level: Email, Account Authentication (None)

*Signed: Joe McGuire*  
Signature Adoption: Pre-selected Style  
Using IP Address: 50.206.253.82

Sent: 9/28/2020 11:27:14 AM  
Viewed: 9/28/2020 12:59:51 PM  
Signed: 9/28/2020 1:00:29 PM

**Electronic Record and Signature Disclosure:**  
Accepted: 9/28/2020 12:59:51 PM  
ID: 0c0f3ce5-29e5-4690-979c-5748e2c0dee0  
Company Name: Saul Centers, Inc., B. F. Saul Company, and respective affiliates and subsidiaries

**Kelly Kelley**  
kkelley@nyajoes.com  
Controller  
Security Level: Email, Account Authentication (None)

*Signed: kelly kelley*  
Signature Adoption: Pre-selected Style  
Using IP Address: 104.208.246.177

Sent: 9/28/2020 1:00:31 PM  
Resent: 9/28/2020 3:33:01 PM  
Resent: 9/28/2020 4:54:22 PM  
Viewed: 9/28/2020 5:20:44 PM  
Signed: 9/28/2020 5:25:44 PM

**Electronic Record and Signature Disclosure:**  
Accepted: 9/28/2020 5:20:44 PM  
ID: 92cc3c4c-f344-4e39-ae3a-c3061151e0d3  
Company Name: Saul Centers, Inc., B. F. Saul Company, and respective affiliates and subsidiaries

**Bryan Megary**  
bryan.megary@bfsaulco.com  
Security Level: Email, Account Authentication (None)

*Signed: BM*  
Signature Adoption: Pre-selected Style  
Using IP Address: 38.100.6.140

Sent: 9/28/2020 5:25:47 PM  
Viewed: 9/29/2020 11:28:45 AM  
Signed: 9/29/2020 11:29:24 AM

**Electronic Record and Signature Disclosure:**  
Accepted: 9/29/2020 11:28:45 AM  
ID: d67238e1-005b-4ed2-85b0-ddf8f8534e0a  
Company Name: Saul Centers, Inc., B. F. Saul Company, and respective affiliates and subsidiaries

| Signer Events | Signature | Timestamp |
|---|---|---|
| Scott Schneider<br>scott.schneider@bfsaulco.com<br>EVP-CFO<br>Security Level: Email, Account Authentication (None) | DocuSigned by:<br>Scott Schneider<br>—07A436DHCC8841A...<br>Signature Adoption: Pre-selected Style<br>Using IP Address: 69.143.168.33 | Sent: 9/29/2020 11:29:27 AM<br>Viewed: 9/30/2020 8:50:25 AM<br>Signed: 9/30/2020 8:51:58 AM |

Electronic Record and Signature Disclosure:
 Accepted: 9/30/2020 8:50:25 AM
 ID: 8309372d-33cf-4e69-8552-bd785e58dbc6
 Company Name: Saul Centers, Inc., B. F. Saul Company, and respective affiliates and subsidiaries

| | | |
|---|---|---|
| Audra Justus<br>audra.justus@saulcenters.com<br>Security Level: Email, Account Authentication (None) | DocuSigned by:<br>Audra Justus<br>—CFE1A2956F33421...<br>Signature Adoption: Pre-selected Style<br>Using IP Address: 38.100.6.140 | Sent: 9/30/2020 8:52:02 AM<br>Viewed: 9/30/2020 10:03:48 AM<br>Signed: 9/30/2020 10:03:56 AM |

Electronic Record and Signature Disclosure:
 Accepted: 9/30/2020 10:03:48 AM
 ID: bc818317-7673-4792-b8b6-6f610606d216
 Company Name: Saul Centers, Inc., B. F. Saul Company, and respective affiliates and subsidiaries

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 9/30/2020 8:52:02 AM |
| Certified Delivered | Security Checked | 9/30/2020 10:03:48 AM |
| Signing Complete | Security Checked | 9/30/2020 10:03:56 AM |
| Completed | Security Checked | 9/30/2020 10:03:56 AM |

| Payment Events | Status | Timestamps |
|---|---|---|

Electronic Record and Signature Disclosure

Electronic Record and Signature Disclosure created on: 6/23/2020 3:49:17 PM
Parties agreed to: Joe McGuire, Kelly Kelley, Bryan Megary, Scott Schneider, Audra Justus

## INFORMED CONSENT AGREEMENT TO USE ELECTRONIC RECORDS AND SIGNATURES ("Consent Agreement")

### Why We Are Asking for Your Consent?

In order to create electronic, rather than paper records for use in Saul Centers, Inc., B. F. Saul Company, or their respective affiliates or subsidiaries' (each, a "Saul Company" and collectively, the "Saul Companies") relationship with you, you must provide your consent and agreement. Specifically, in order for Saul Companies to send you electronic documents and have you electronically sign them using DocuSign Inc. ("DocuSign") electronic signature system, rather than signing paper documents by hand, we need your informed consent.

### What Your Consent Means

Your consent is optional. By checking the box next to "I agree to use electronic records and signatures" and accessing the electronic document(s) associated with this transaction, you will be giving us your informed consent and agreement to use the DocuSign electronic documents and signature system and process to electronically receive and review and electronically sign paperless documents. <u>You will be agreeing to be bound by any documents you electronically sign in the same manner and to the same extent as if you had received a paper copy of the document and signed it by hand with an ink pen.</u> If you do not agree to the terms of this Consent Agreement, do not check the box next to "I agree to use electronic records and signatures". Even if you agree now, you will be able to choose in the future whether or not to electronically sign any document that we send to you. If you do not agree to use the DocuSign electronic documents and signature system, please contact the person or department responsible for sending this document immediately to process this transaction by paper.

### What Documents You Will Receive Electronically

By agreeing to this Consent Agreement, you will be able to receive, review and sign electronically the electronic documents presented when you click the "Review Document" button. These electronic documents may include, but are not limited to any and all documents related to the transaction between you and a Saul Company.

### How You Will Receive Electronic Documents

We will place one or more electronic documents, which may or may not require your signature, in an electronic envelope on the DocuSign system, and a link to the envelope will be emailed to you. You will access the envelope and electronic documents by clicking the link in the email. This link may direct you to a verification system where you may be asked to provide an access code or additional information to authenticate your identity. Once you complete the authentication process, you will be able to review the documents and, if applicable, electronically sign them using the DocuSign system. You agree to immediately notify us if you receive any electronic document or information that appears to be sent in error or not intended for you.

### How to Withdraw Your Consent

By executing an electronic document(s), you consent and agree to be bound by such document(s). You can always choose not to give your consent when you are presented with an envelope. If you do this, you will be unable to proceed electronically and execution will occur with the use of paper documents and signatures. If you execute a Consent Agreement for an envelope, although you may not withdraw it, you can still choose not to electronically sign any or all electronic documents in that envelope. Once you electronically sign a particular document, you cannot withdraw the signature for that document, but you can choose not to electronically sign any other documents included in the same envelope. In addition, before you complete an electronic signature of a document, you may cancel and exit the electronic signing process before clicking the "Confirm Signing" or "Finish" (or other similarly titled button) and closing your browser.

**How to Retain Electronic Documents**

You should retain a copy of all electronic documents we provide to you, including this Consent Agreement, for your future reference. You can do this by printing a document on paper or saving it to your electronic document filing system. You can also, in addition to printing a paper copy of a document and/or saving it to your electronic document filing system, obtain a paper copy from us by contacting the sender of the document, and a copy will be mailed to your current address on file with the Saul Companies. It is your responsibility to provide us with an accurate and complete e-mail address and other contact information, and to maintain and update promptly any changes in that information.

**What Is the DocuSign System?**

The Saul Companies have entered into an agreement with DocuSign to make the DocuSign electronic signature system available to facilitate your receipt, review and electronic signature of electronic documents. Your use of the DocuSign system is subject to DocuSign Terms of Use available at www.docusign.com/company/terms-of-use. The Saul Companies and DocuSign are not affiliated with each other. The Saul Companies are not responsible for the DocuSign system, and we disclaim any representations and all warranties regarding the DocuSign system. Your use of the DocuSign system is entirely your choice and solely your responsibility.

**What Are Your Hardware and Software Requirements**

In order to receive electronic documents and electronically sign them, you will need access to a computer or mobile device with internet service and access to an email account. In order to access the electronic documents sent to you, your computer or mobile device must meet certain requirements, the current version of which is shown below. The requirements will change from time to time, and without notice to you, as third-party technology providers update their products. You can visit www.docusign.com/company/terms-of-use/specifications for the most up-to-date system requirements. These requirements include but are not limited to: (1) an operating system and internet browser that together support the display of PDF documents; and (2) up-to-date PDF reader software.

The current version of software and hardware that meets these requirements is identified below. We reserve the right to discontinue support of an operating system if, in our sole opinion, it suffers from a security flaw or other flaw that makes it unsuitable for use in a transaction.

| Operating Systems | Windows® XP, Windows Vista®; Windows® 7, Mac OS® X |

| Browsers | Latest stable release (except where noted) of Internet Explorer® (8.0 or above, compatibility mode is supported only for 9.0 and above); Windows Edge; Mozilla® Firefox®, Safari™; Google Chrome®. Pre-release (e.g., beta) versions of operating systems and browsers are not supported. |
|---|---|
| Mobile Web Signing | Apple iOS® 7.0 or above. Android™ 4.0 or above. |
| Mobile Applications | Apple iOS® 8.0 and above; Android™ 4.0 and above; Windows 8.1 and above; Windows 10; Windows Phone 8.1. |
| PDF Reader | PDF reader software may be required to view and print PDF files. |
| Screen Resolution | 1024 x 768 minimum |
| Enabled Security Settings | Allow per session cookies |

Your email notifications are made available in HTML (regular Web hypertext) format, and your electronic documents are made available in PDF format.

**Security and Privacy Information**

In accessing electronic documents and electronically signing them, you should use a computer operating system that has an activated firewall (software that is designed to prevent unauthorized access to your computer by blocking suspicious people or websites). You should also make sure that your computer has active anti-virus software.

Emails sending you links to envelopes with electronic documents for electronic signature are not encrypted (unless the email expressly says that it is encrypted); but the contents of the envelopes are protected. Be aware that some email addresses may use all or part of your name. Although we believe that email is a reasonably reliable method of delivery, as with any form of communication, there is a risk of misdelivery or interception.

DocuSign's privacy policy applies to your use of the DocuSign system. Accessing the DocuSign system via a mobile device involves the electronic transmission of information across the networks of your wireless service provider. The Saul Companies are not responsible for the privacy or security of wireless data transmissions. Use only reputable service providers and check with your wireless service provider for information about its privacy and security practices.

**The Effect of Your Consent Agreement**

By checking the "I agree to use electronic records and signatures" box and then clicking the "Continue" button, you are providing your electronic signature on this Consent Agreement and indicating that you acknowledge, and agree that:

- You have read this Consent Agreement and understand it.

- You consent to electronically receive and review the electronic documents included in the electronic envelopes sent to you.